Hostetter et al., Appellants, *v.* Pennsylvania
Public Utility Commission et al.

Argued November 13, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Harold S. Shertz,* with him *Shertz, Barnes & Shertz* and *W. G. Johnstone, Jr.,* for appellants.

*Gabriel D. Weiss,* with him *Vincent P. McDevitt* and *James H. Duff,* Attorney General, for Public Utility Commission.

*E. Russell Shockley,* with him *Schnader, Kenworthey, Segal & Lewis* and *Paul A. Mueller,* for intervening appellees.

OPINION BY RENO, J., December 11, 1946:

This appeal brought up for review an order of the Public Utility Commission dated January 29, 1945, granting a certificate of public convenience to Motor Freight Express, Inc., (hereinafter called "Motor Freight"), evidencing its approval of the acquisition by Motor Freight of the certificated rights and certain equipment of Conestoga Transportation Company (hereinafter called "Conestoga"). The appellant operates Keystone Express and Storage Company (hereinafter called "Keystone"), and it and the intervening appellant, Lancaster Transportation Company, render motor freight service under similar certificates in the same general territory. Conestoga and Motor Freight are intervening appellees.

After the appeal was taken, upon the commission's petition, the record was remanded so that it might consider a petition filed with it by York Motor Express Company (hereinafter called "York Motor"), another carrier operating in the same territory, seeking a reconsideration and clarification of the initial order. After a hearing the commission denied the petition. York Motor did not appeal, and is not a party in this court, but the record of the hearing upon that petition is part of the record before us.

Prior to the institution of these proceedings, Conestoga's certificate authorized it, inter alia, to transport freight by motor vehicles between points in the city of Lancaster, between that city and Lancaster County points, and in a portion of upper Chester County. It was also authorized to interchange freight at Lancaster with other carriers, including Motor Freight. Motor Freight was authorized to transport freight over designated routes between Harrisburg, Philadelphia, Lancaster, Reading, Pottsville, York and Hanover, and intermediate points on the routes. It had interchange rights at Lancaster with Conestoga.

The privilege of interchange allows a carrier to accept freight originating at points included in its certificate destined for delivery beyond its territory and to carry it to the interchange station where it is transferred to another carrier which delivers it to the destination in the territory embraced in the latter's certificate.

The joint application of Motor Freight and Conestoga sought an order (a) transferring Conestoga's *existing* certificated rights to Motor Freight, and (b) the *additional* right to Motor Freight to coördinate, merge and consolidate Motor Freight's existing rights with those acquired from Conestoga, including the right to render continuous and through service between points covered under Motor Freight's existing certificate and those acquired from Conestoga. The order of the commission approved the transfer of Conestoga's existing rights to Motor Freight, but denied the *additional* rights sought by Motor Freight. The effect of the order will be clarified by our further discussion.

I. The Public Utility Law of May 28, 1937, P. L. 1053, §202, 66 PS §1122, provides: "Upon approval of the commission, evidenced by its certificate of public convenience . . . and not otherwise, it shall be lawful: . . . (c) For any public utility to begin the exercise of any additional right, power, franchise, or privilege. (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege. (e) For any public utility, . . . to acquire from, or to transfer to, any person or corporation, . . . by any method or device whatsoever, . . . the title to, or the possession or use of, any tangible or intangible property used or useful in the public service."

Under §203, 66 PS §1123, the commission may issue a certificate of public convenience "only if and when the commission shall find or determine that the grant-

ing of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public".

At this point, it should be observed that, under §1107, 66 PS §1437, review upon appeal is limited, and: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

When we discover that an order is supported by substantial evidence we do not, in this class of cases, examine the wisdom of the action of the commission. Unless the order is so capricious, arbitrary or unreasonable as to amount to an error of law, we do not disturb the commission's conclusion. *Horn's Motor Express, Inc., v. Pa. P. U. C.,* 148 Pa. Superior Ct. 485, 26 A. 2d 346; *Modern Transfer Co. v. Pa. P. U. C.,* 139 Pa. Superior Ct. 197, 12 A. 2d 458; *Alko Express Lines v. Pa. P. U. C.,* 152 Pa. Superior Ct. 27, 30 A. 2d 440.

II. Appellants contend that the order is not supported by evidence, and they point out that no evidence was introduced to show that the certificate under review is necessary for the convenience of the public. It is true that no shipper or other witness testified upon the question of public convenience.

Since 1937 the commission has followed a rule, established by its decision in *Grimm's Application,* 17 Pa. P. U. C. 25, that in applications for transfers of existing certificated rights proof of necessity shall not be required.

Hitherto the rule has not been presented for judicial scrutiny, but we experience no difficulty in approving it. It is only an application of a familiar and elementary common-law principle, the so-called presumption of continuance doctrine, by which a condition of a continuous nature once established may be assumed to

continue until the contrary is shown. Cf. *Donze v. Devlin,* 329 Pa. 1, 195 A. 882. The factor of necessity was canvassed and settled when Conestoga's certificate was issued. Conestoga rendered service under its certificate until the transfer to Motor Freight. These circumstances establish public necessity for the service, and, in the absence of proof to the contrary, the commission was warranted in concluding in the proceedings for the transfer that the element of public necessity still existed. Cf. *Ramsey v. Public Utilities Com.,* 115 Ohio 394, 154 N. E. 730; *University City Transfer Co. v. Florida Railroad Com.,* 124 Florida 308, 168 So. 413.

The qualifications of the transferee, Motor Freight, to render the service for which Conestoga had been certificated, the reasonableness of the purchase price, and similar questions were relevant to the inquiry. No objection has been made to the sufficiency of the evidence presented upon those points, and our study of the record convinces us that the order is supported by sufficient and substantial evidence.

III. Appellants also challenge the order upon the ground that while the commission ostensibly denied to Motor Freight the additional right to coördinate, merge and consolidate its service with that of Conestoga, the order nevertheless in reality grants those rights. This contention was examined by the commission upon the petition of York Motor, to which reference has been made, and it found: "According to the uncontradicted record made at the hearing on January 3, 1946, Motor Freight Express Company, Inc., since taking over the rights of Conestoga Transportation Company has not attempted to set up direct service or otherwise consolidate or merge its old and new rights. The petitioner submitted no testimony or evidence which would tend to support its contention that the Order of January 29, 1945, is not clear as to meaning or that operation under it effects a consolidation or merger contrary to Commission intent".

To substantiate their position appellants rely upon testimony taken in another proceeding in which Keystone applied to the commission for a certificate authorizing it to render direct service to certain points south of the city of Lancaster. The examiner allowed the record to be incorporated in the record of the York Motor hearing for the information of the commission. The commission seems to have taken no notice of it, and for obvious reasons we think it is irrelevant to the pending inquiry.

We have already stated that prior to these proceedings, Conestoga had interchange rights with Motor Freight at Lancaster. The transfer of Conestoga's existing certificated rights to Motor Freight necessarily included its interchange privileges. The additional right to merge and consolidate the services was denied. As a result Motor Freight is obliged to operate precisely as if Conestoga were still functioning, except that Motor Freight may use its own facilities and equipment. Under the order, Motor Freight is required to conduct the former Conestoga functions over the same routes and in the same manner as Conestoga had operated, and freight moving in or out of Conestoga's antecedent territory must be channeled through, and may be transferred only at, Lancaster.

An illustration provided by the record will expound the significance of our statement concerning the effect of the order. For many years Motor Freight has been transporting freight from Reading to Lancaster by way of Ephrata. Because it was not authorized to serve Ephrata it was required to carry freight originating in Reading consigned to Ephrata through Ephrata to Lancaster, and there transfer it to Conestoga which hauled the goods back to Ephrata. Had Motor Freight secured the right to merge and consolidate its services it would have been permitted to deliver the shipment at Ephrata while its truck was moving from Reading to Lancaster.

The order now under review requires Motor Freight to treat Reading-Ephrata freight exactly as it was handled before, that is, Motor Freight picks it up in Reading, transports it through Ephrata to Lancaster, where it is unloaded and transferred to other trucks and carried by Motor Freight to Ephrata.

We are not concerned with the wisdom of the regulation. It may have been the proper and necessary solution of problems arising out of conflicting competitive conditions. But it vividly demonstrates that there is a vital distinction between the rights for which Motor Freight applied and those which it received. To Motor Freight, and the evidence amply supports the order, there was transferrd with Conestoga's other certificated rights only the interchange right which Conestoga had under its certificate. There is no evidential basis for the contention that Motor Freight's certificate authorizes it to merge and consolidate or to perform acts equivalent to a merger and consolidation.

Order affirmed at appellants' costs.