Duquesne Light Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued July 14, 1953. Before Rhodes, P. J., Hirt, Reno, Ross, Gunther and Wright, JJ.

*Charles E. Kenworthey,* with him *Thomas J. Munsch, Jr.; Henry G. Wasson, Jr., C. K. Robinson,* and *David Dunlap,* for Duquesne Light Company, appellant.

*Anne X. Alpern,* City Solicitor, with her *J. F. McKenna, Jr.,* Assistant City Solicitor, for City of Pittsburgh, appellant.

*William J. Grove,* Assistant Counsel, with him *W. Russel Hoerner,* Assistant Counsel, and *Lloyd S. Benjamin,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Robert L. Orr,* with him *Harold F. Reed* and *Reed, Ewing & Ray,* for intervening appellee.

PER CURIAM, August 28, 1953:

The Duquesne Light Company and the City of Pittsburgh have appealed from the order of the Pennsylvania Public Utility Commission of March 9, 1953, wherein the Commission, with certain exceptions therein indicated, affirmed its order of August 29, 1951, and again directed the Duquesne Light Company to submit the amount of refund due to each customer as set forth in the previous order.

The present proceeding is the result of the reversal of the Commission's order of August 29, 1951, and the remanding of the record for further action and consideration by the Commission in certain respects. *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 187, 90 A. 2d 607.

The original proceeding had its beginning on February 6, 1950, when Duquesne filed a new tariff (No. 10) to become effective on April 10, 1950, and designed to produce additional annual revenue of $7,720,612. The City of Pittsburgh and certain other municipalities and industrial consumers filed complaints against the proposed tariff. The Commission initiated an investigation on its own motion for the purpose of determining the fairness, reasonableness, justness, and lawfulness of the rates and charges of Duquesne under the new tariff; at the same time, the Commission suspended operation of the proposed tariff for a period of six months, or until October 10, 1950. An additional suspension of three months postponed the effective date of the tariff until January 10, 1951, when the new rates under tariff No. 10 became effective by operation of law. The Commission, after extended hearings, made its final order of August 29, 1951, in which it found that Duquesne was entitled to an increase of only $3,556,924, and ordered the filing of an acceptable tariff which would produce annual operating revenues of $60,574,238 based upon the 1949 level of operations. In its final order of August 29, 1951, the Commission also directed Duquesne to refund to its customers the difference between the actual electric revenues received under tariff No. 10 and the revenues that would have been received if the new tariff (No. 11), which had been directed to be filed, had been in effect from January 10, 1951, to October 21, 1951, the effective date of the new tariff. Appeals were taken to this Court from that order of the Commission by Duquesne Light Company, the City of Pittsburgh, St. Joseph Lead Company, and Crucible Steel Company of America, and disposition thereof was made by our opinion in *City of Pittsburgh v. Pennsylvania Public Utility Commission*, supra, 171 Pa. Superior Ct. 187, 90 A. 2d 607.

We therein held, in reversing the order of the Commission and remanding the record, that the Commission had erred in capitalizing and including in the rate base certain coal leaseholds charged to operating expenses, in making an allowance for cash working capital of $3,500,000 as an item in the rate base, in basing its rejection of ten-year average prices for estimating reproduction cost on erroneous reasoning. After reviewing the evidence and the contentions of the respective parties, we also stated that the Commission should re-examine the adjustments to 1949 base year figures relating to expenses and revenues. We also directed that the Commission consider any further available material evidence as to taxes under federal and state laws.

Following the order of this Court, reversing the Commission's order of August 29, 1951, and remanding the record for the purposes therein set forth, the Commission provided that hearings be held beginning December 11, 1952. On that date Duquesne filed a new tariff (No. 12) proposed to become effective March 1, 1953, and containing the same rates as tariff No. 10 which had been found excessive by the Commission in its order of August 29, 1951. Tariff No. 12 would increase annual revenues by $4,800,000. Complaints were filed against this last tariff. The Commission has instituted an investigation on its own motion and has suspended the operation of that tariff for a period of six months, or until September 1, 1953.[1]

At the hearings before the Commission on December 11 and 12, 1952, and February 18, 1953, Duquesne contended, in effect, that under the order of this Court in *City of Pittsburgh v. Pennsylvania Public Utility*

---

[1] On August 24, 1953, the Commission ordered an additional suspension of tariff No. 12 for three months, or until December 1, 1953.

*Commission,* supra, 171 Pa. Superior Ct. 187, 90 A. 2d 607, that it could inaugurate virtually a new rate case, introduce evidence as to the operating experience of the Company for the years 1951 and 1952, establish that the rates under tariff No. 11 were too low, eliminate the refunds ordered by the Commission under tariff No. 11 as unwarranted, and obtain under tariff No. 12 the full increase in revenue of $7,700,000 originally sought under tariff No. 10. The City of Pittsburgh and the Industries interposed an objection to this procedure. The Commission ruled that the evidence on rehearing would be limited to relevant testimony on the adjustment of the 1949 revenues and expenses in the light of the 1950 actual experience of Duquesne. Duquesne thereupon refused to offer further evidence on that subject after the Commission's ruling. In its final order of March 9, 1953, the Commission found that the rates set forth in tariff No. 11 were fair and reasonable, and applicable to service rendered during the period of January 10, 1951, to October 20, 1951. Reiterated in that order was the direction that Duquesne refund to its consumers the difference between the actual revenues received under tariff No. 10 and the revenues that would have been received if tariff No. 11 had been in effect from January 10, 1951, to October 20, 1951.

On April 16, 1953, we granted Duquesne's petition for supersedeas as to the calculation and payment of refunds ordered by the Commission on March 9, 1953, amounting to approximately $3,400,000 with interest.

The order of the Commission of March 9, 1953, will be affirmed.

In accordance with the order of this Court (*City of Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 187, 218, 90 A. 2d 607), the Commission revised and modified its previous order of

August 29, 1951, by eliminating coal leaseholds from the rate base as a capital item, disallowing cash working capital previously estimated at $3,500,000, and withdrawing its rejection of ten-year average prices for the years 1940 to 1949, which were in the record, in estimating reproduction cost. The Commission found the fair value of Duquesne's property used and useful in the public service to be $208,000,000 as compared with its previous finding of $215,000,000. This revised valuation results in an allowable return of $12,480,000, or $420,000 less than permitted by the Commission's order of August 29, 1951.

The City and the Industries had complained that the Commission adjusted 1949 expenses upward to reflect certain actual increased expenses incurred in 1950, but that it did not correspondingly adjust 1949 revenue figures to reflect an increase in operating revenues as shown by Duquesne's report to the Commission for the year 1950. Consequently the Commission re-examined the feasibility of adjusting 1949 revenues in light of 1950 experience, and concluded it was impractical. But, in its order of March 9, 1953, the Commission has reassessed the evidence and made certain revisions in its prior order. It reduced the previous estimate of Duquesne's allowable taxes, exclusive of income taxes, by $1,088,339, largely because of the repeal of the federal electric energy tax by the Revenue Act of 1951. The Commission found, however, that Duquesne's federal income tax would be increased by that Act in the amount of $1,308,200, and that its state tax would be increased by $44,400. In the matter of wages, salaries, and pensions, the Commission disallows the prior estimated 1950 increases to the extent of $497,000, and it deducted $420,000 of allowable return due to the decrease of $7,000,000 in the finding of fair value. The final result of these modifications and adjustments of

the 1949 base year figures by the Commission was to reduce Duquesne's allowable annual revenues of $60,-574,238 to $59,921,499, or a total deduction in allowable revenues of $652,739.

The Commission then determined that the reduction of $652,739 in allowable revenues from those authorized in the previous order, being approximately one per cent of the total, was, from a practical standpoint, too small a reduction to be reflected in lower rates under a new tariff. On the basis of this finding the Commission refused to make an order of possible refunds (additional to the $3,400,000 previously ordered) covering the period of seventeen months from October 21, 1951, to March 9, 1953, indicating that the expense of determining the actual refunds was an important factor in the disallowance. The Commission also pointed out in its order that its adjudication on tariff No. 12 filed by Duquesne on December 11, 1952, would in any event act as a terminal date for any refund questions relating to tariffs Nos. 10 and 11.

The Commission by its order of March 9, 1953, from which these appeals have been taken, has substantially complied with our opinion and order of remand. In its present order the Commission properly applied the law, and it has acted within its discretionary power on the facts before it.

We have recognized in this rate case the necessity and propriety of a cut-off date and of the use of a base year that the Commission may make an order that is final and appealable. Otherwise the process of rate making would have no finality. At the same time the Commission, in determining rates which are prospective, should consider the latest available relevant data. Admittedly the Commission is granted a wide area of discretion as to the extent and the type of adjustments to be made to base year figures. The mak-

ing of such adjustments, being inherent in the Commission's fact-finding function, is largely discretionary; and action thereon will not be reversed if lawful and supported by substantial evidence in the record. Referring to the exercise of its discretionary power, we said: "The Commission may not have exceeded its authority in failing to make the adjustments for which the City and the Industries contend, but the reasonableness of its action is questionable; and to arrive at a fair and equitable result in this case there should be a re-examination of adjusted 1949 expenses and revenues." *City of Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 171 Pa. Superior Ct. 187, 210, 90 A. 2d 607, 618.

The Commission did not commit any reversible error in refusing to make the adjustments of the 1949 base year figures sought by Duquesne, or in limiting the evidence to be presented on remand of the record by this Court.

We have reviewed the entire record, having due regard to our opinion and order in the prior appeals, and we find no error of law in the present order of the Commission of March 9, 1953, which would require a remission of the record in this proceeding. The Commission corrected those errors of law contained in its order of August 29, 1951, and it complied with our direction for further consideration; its order is supported by substantial evidence, and it is not capricious, arbitrary, or unreasonable. The order of the Commission may be vacated or set aside only for "error of law or lack of evidence to support the finding, determination or order. . ." Section 1107 of Act of May 28, 1937, P. L. 1053, as amended, 66 PS §1437; *Hostetter v. Pennsylvania Public Utility Commission,* 160 Pa. Superior Ct. 94, 98, 49 A. 2d 862; *Pittsburgh v. Pennsylvania Public Utility Commission,* 165 Pa. Superior Ct. 519, 524,

69 A. 2d 844; *Pittsburgh v. Pennsylvania Public Utility Commission*, 168 Pa. Superior Ct. 95, 99, 78 A. 2d 35.

The order of supersedeas issued by this Court on April 16, 1953, on petition of Duquesne Light Company, at No. 66, April Term, 1953, is terminated.

The order of the Commission is affirmed.