8

Paradise, Appellant, *v.* Pennsylvania Public
Utility Commission.

Argued March 26, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

10

*Richard V. Zug,* with him *Ernest J. Gazda* and *Edmonds, Obermayer & Rebmann,* and *Gazda & Cottone,* for appellant.

*Paul Ribner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Charles L. Casper,* with him *John H. Hersker* and *Fahey & Casper,* for intervening appellees.

OPINION BY WRIGHT, J., June 11, 1957:

We are here concerned with the appeal of Louis J. Paradise, trading as Paradise Trucking Company, from an order of the Pennsylvania Public Utility Commission dated October 1, 1956. The order under consideration rescinded a prior order of the Commission dated July 12, 1954, and directed that the service which Paradise was providing under authority of said prior order should forthwith cease. On November 16, 1956, we granted a supersedeas. It will be necessary to set forth the history of the proceeding in some detail.

Russell J. Lott, trading as Lott Motor Lines, had operated since 1939 as a common carrier under certificate of public convenience issued by the Pennsylvania Public Utility Commission. His most recent certificate, dated August 9, 1948, at Docket No. 30986, Folder 9, included eight Class D rights and one Class C right. Among these was the right to transport, as a Class D carrier, raw materials, machinery and manufactured

products between points in the Borough of Laceyville, Wyoming County, and within fifty miles of the limits of the said borough. The base of his operation was Meshoppen, Wyoming County.

On November 28, 1953, Paradise filed an application at Docket No. 71539, Folder 5, for a transfer of the rights issued to Lott. Paradise was already a certificated common carrier, having been authorized on October 9, 1950, to transport as a Class B carrier, property between points in the City of Scranton and within three miles of the city limits; also to transport household goods to points within forty miles of Scranton, coal to points within ten miles, and materials usually transported in dump trucks to points within twenty-five miles. Following the filing of protests, a hearing was held on March 12, 1954. Testimony was received from both Paradise and Lott, and from witnesses for the protesting carriers. On July 12, 1954, an order was issued evidencing the Commission's approval of the transfer. Paradise thereupon established a general transportation service for property of all kinds in the Scranton area, and between that area and points to the east as far as Honesdale, to the south as far as Hazleton, to the west as far as Williamsport, and to the north as far as the New York line. The base of his operation is Scranton.

On July 26, 1954, counsel for the protestants acknowledged receipt of a copy of the Commission's order. On August 13, 1954, there was filed with the Commission, on behalf of the protesting carriers an "application for rehearing and reconsideration and rescission of the order". An answer was filed by Paradise on August 19, 1954. We here digress to point out that the Commission should have avoided the subsequent procedural difficulty by dismissing the petition for rehearing on the ground that it was not filed with-

in fifteen days after service of the order as required by Section 1006 of the Public Utility Law.[1] See *Beaver Valley Water Co. v. Pa. P. U. C.*, 140 Pa. Superior Ct. 297, 14 A. 2d 205. The Commission could then have instituted an entirely separate and independent proceeding. Instead of doing so, the Commission advised Paradise, by letter dated December 7, 1954, that it had "reopened the application . . . under the provisions of Section 1007 of the Public Utility Law and directed that said application be scheduled for rehearing". This letter further set forth that the record in the matter of Lott's application at Docket No. 30986, Folder 9, was to be incorporated by reference and made available to the parties at the "rehearing".

We again digress to point out that, under the provisions of Section 1007 of the Public Utility Law (66 P.S. 1397), "The commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it". While this section is not restricted to complaint proceedings involving violations of the terms and conditions of certificates, *Latrobe Bus Service v. Pa. P. U. C.*, 175 Pa. Superior Ct. 164, 103 A. 2d 442, it does require notice and an opportunity to be heard. The Commission is bound by the due process provisions of constitutional law: *West Penn Power Co. v. Pa. P. U. C.*, 174 Pa. Superior Ct. 123, 100 A. 2d 110.

On February 11, 1955, there was a hearing pursuant to the Commission's letter of December 7, 1954. Appellant's position that this was actually a "rehearing" is supported to some extent by the following excerpt from the Commission's letter dated January 21, 1955, addressed to a carrier, theretofore not a protestant, who attempted to file a belated protest: "The

---

[1] Act of May 28, 1937, P. L. 1053, Section 1006, 66 P.S. 1396.

rehearing scheduled in this matter at Scranton for February 11, 1955, was granted by the Commission upon Petition of protestants of record in the application and participation therein is limited to the original parties of record". Counsel for Paradise objected at the outset that the petition for rehearing was not timely under Section 1006, and that his client had "not been apprised of what the issues are under Section 1007". There was also a controversy concerning the incorporation into the record of Lott's Folder 8. After considerable discussion, and at the request of counsel for all parties, the examiner decided to submit the questions involved to the Commission before taking further testimony.

By letter dated April 13, 1955, and set forth in the footnote,[2] the Commission advised Paradise that the

---

[2] "In Executive Session held April 11, 1955, the Commission reserving the question of jurisdiction overruled the objections of applicant to further proceedings in the above captioned application and directed that the matter be set for further hearing to receive evidence, at a time and place to be fixed.

"The Commission further directed that the record in the matter of the application of Russell Lott at A. 30986, Folder 8, be incorporated by reference into the instant record and that said Folder 8, together with Folder 9 of the same docket, be made available to the parties at the further hearing.

"The Commission also directed that the parties submit relevant evidence to enable the Commission to determine: (a) the nature, character and extent of the service provided by the transferor prior to filing of the application for transfer. (b) the nature, character and extent of service proposed to be provided by transferee upon approval of the transfer.

"The parties are advised that evidence as outlined above is required in order that the Commission may determine whether the service to be provided by the transferee is to be of the same general class as that authorized to or provided by the transferor and for which there may be a presumption of continuing necessity, or whether it will constitute a basically new service requiring proof of public necessity before it may be authorized".

14

matter was to be listed for further hearing to determine whether proof of public necessity would be required. Pursuant to this letter there was a hearing on June 3, 1955, and an adjourned hearing on June 27, 1955. It should be noted that, at the conclusion of the adjourned hearing, counsel for protestants moved "that the Commission set this matter down for further hearings and require that the applicant furnish proof of public necessity". Although taking the position that the question of public necessity was "not within the scope of the inquiry", counsel for Paradise stated that, if the Commission adopted a contrary view, "then we will, of course, have to comply with their ruling".

In its order of October 1, 1956, presently under attack, the Commission took the position that the basic requirements of notice and hearing as outlined in Section 1007 had been met; further that, since there was no testimony in the record of need for the service which Paradise had established, the approval of the transfer to him of Lott's rights "must be withdrawn, our order of July 12, 1954 must be rescinded and the service provided thereunder must be terminated". The Commission stated that its order was issued without prejudice to the right of Paradise to petition for further hearing for the purpose of presenting evidence of public necessity, or to his right to file an appropriate new application. Commissioner Houck voted in the negative and filed a dissenting opinion, a portion of which is set forth in the footnote.[3]

---

[3] "The applicant contends that he has been deprived of procedural due process in that he has not been apprised of the grounds upon which his certificate was called in question. I pass over this matter although I note that the issues argued by the parties are not specifically answered nor considered in the majority order. Consequently, it is difficult to determine the precise issues involved in the case. Considering only the merits, I can not find any warrant for the rescission of the Paradise certificate".

Appellant's statement of the questions involved is as follows: "1. Does Section 1007 of the Public Utility Law authorize the Commission to consider a Petition for Rehearing filed after the statutory time limit, and upon consideration thereof to reopen the application proceeding for further hearing; 2. Is an order of the Commission res judicata as to the questions raised or which might have been raised, if no petition for rehearing or appeal is filed within the statutory time therefor; 3. Is performance by a certificate holder of authorized service more energetically and from a different base than his predecessor carrier cause for revocation of his certificate of public convenience; 4. After a certificate of public convenience has been granted upon a finding of public necessity, does a presumption of continuing necessity exist until it is rebutted by conclusive evidence to the contrary; 5. Is there conclusive evidence in this record to rebut the presumption of continuing necessity; 6. Where the Commission in a proceeding under Section 1007 of the Public Utility Law finds that the public need for service is an issue, may it revoke a certificate of public convenience without first affording the certificate holder an opportunity to present evidence on that issue".

We agree with appellant that Section 1007 does not authorize the Commission to breathe life into a belated petition for rehearing under Section 1006. However, the filing of such a petition cannot limit the Commission's authority to take independent action under Section 1007. The line of demarcation between a rehearing under Section 1006 and an independent inquiry by the Commission under Section 1007 may frequently be very faint, and we are unwilling to fetter the power of the Commission merely because of unfortunate terminology. The real issue on this appeal is whether the requirements of Section 1007 have been

observed. In an application for transfer of existing rights, proof of necessity is not required: *Hostetter v. Pa. P. U. C.*, 160 Pa. Superior Ct. 94, 49 A. 2d 862. However, in the case at bar the Commission takes the position that a new transportation service, designed primarily for the Scranton area, had been created without the requisite evidence of public necessity. Our point of disagreement with the Commission is that, as expressly recognized by the motion of counsel for protestants heretofore mentioned, appellant should have been given an opportunity to present evidence on that question before the rights which had been transferred to him from Lott were rescinded.

We are not impressed by appellant's contention that, since no appeal was taken, the order of July 12, 1954, is res judicata. He relies upon *Bickley v. Pa. P. U. C.*, 148 Pa. Superior Ct. 399, 25 A. 2d 589, which involved a procedural situation clearly distinguishable from that in the case at bar. A certificate of public convenience is neither a contract nor property, and its revocation does not deprive the holder of vested rights: *Day v. P. S. C.*, 312 Pa. 381, 167 A. 565. We have said that "broad powers were intended to be given to the commission to carry out the purpose of our utility legislation": *Womelsdorf Consolidated Water Co. v. Pa. P. U. C.*, 160 Pa. Superior Ct. 298, 50 A. 2d 548. And see the declaration of policy set forth in Section 801 (66 P.S. 1301). It is expressly provided in Section 902 (66 P.S. 1342) that, in addition to its enumerated powers, "the commission shall have full power and authority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders, or otherwise, all and singular the provisions of this act, and the full intent thereof; and shall have the power to rescind or modify any such regulations or orders". In effect, the Commission's present inquiry questions the rights origi-

nally granted to Lott, in the light of their operation by Paradise subsequent to the transfer.

While the Commission may not act arbitrarily, it has the same power to revoke a certificate as it has to issue it, upon due cause being shown: *Diehl v. P. S. C.*, 69 Pa. Superior Ct. 419. And see *Day v. Pa. P. U. C.*, 107 Pa. Superior Ct. 461, 164 A. 65; affirmed 312 Pa. 381, 167 A. 565. In its order of October 1, 1956, the Commission stated that "it was clearly established that the transferor [Lott] originally sought and thereafter exercised rights only between the area near his home in Meshoppen and other points in Pennsylvania. He seldom, if ever, transported between points in the Scranton-Wilkes-Barre area. Therefore, the situation with which we are here dealing is not one such as arises when an aggressive and financially sound company or individual acquires by transfer a withering or neglected transportation business which, up to the time of the transfer, had been a source of little concern to competing carriers in the area. Here, the withering if not already dead rights, were not revived and conducted by the transferee in their native terrain, an area close to the boundaries of Bradford and Wyoming counties. They were uprooted and transplanted in Scranton to form a basis for a service which did not have the slightest resemblance to any service previously provided by the transferor".

We agree with appellant that energetic performance of authorized service does not constitute cause for revocation of a certificate. As previously noted, however, the Commission's position is that the service presently being performed by Paradise is new and different, and that proof of public necessity is therefore required. It is for this reason that the presumption of continuing necessity, *Hostetter v. Pa. P. U. C.*, supra, 160 Pa. Superior Ct. 94, 49 A. 2d 862, does not apply.

18

See *Lancaster Transportation Co. v. Pa. P. U. C.,* 169 Pa. Superior Ct. 284, 82 A. 2d 291. It is well established that the extent to which there shall be competition in intra-state transportation is largely a matter of policy which the legislature has committed to the sound judgment and discretion of the Commission: *Daily Motor Express, Inc. v. Pa. P. U. C.,* 183 Pa. Superior Ct. 120, 130 A. 2d 234.

As doubtless apparent from what has been thus far said, we are in agreement with appellant's final contention to the extent that he should be given an opportunity to present evidence on the question of public necessity. However, we have concluded that a complete new proceeding is not indicated. The Commission's letter of April 13, 1955, clearly sets forth that, if it was determined that appellant was conducting "a basically new service", proof of necessity would ultimately be required. The present situation is therefore not controlled by *Armour Transportation Co. v. Pa. P. U. C.,* 138 Pa. Superior Ct. 243, 10 A. 2d 86, cited by appellant. It is our view that justice will best be accomplished by remanding the record under the provisions of Section 1107 (66 P.S. 1437) for the purpose of affording appellant an opportunity to present testimony on the question of public necessity for his service as presently operated.

The order of the Commission is vacated, and the record is remanded for further proceedings in accordance with the foregoing opinion.