W. D. Rubright Co. et al., Appellants, *v.*
Pennsylvania Public Utility
Commission.

Argued November 14, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

244

*Frederick L. Kiger,* with him *Jerome Solomon,* for appellants.

*William A. Goichman,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Paul Leo McSorley,* for intervening appellee.

OPINION BY FLOOD, J., January 16, 1962:

This is an appeal from an order of the Public Utility Commission approving a transfer from William Lenzner of Ben Avon, Pennsylvania, to Robert H. Carr and Sons of Malvern, Pennsylvania, of the following motor carrier rights:

"To transport, as a Class D carrier, milk in glass lined tanks from points within one hundred twenty-five (125) miles by the usually traveled highways of the limits of the City of Pittsburgh, Allegheny County, to points in the said city.

"To transport, as a Class D carrier, raw milk in glass lined milk tanks for the Meadow Gold Dairies, Inc., from the Borough of Berlin, Somerset County, to the City of Pittsburgh, Allegheny County.

"To transport, as a Class D carrier, milk and milk products in containers and cans, bulk and tank trucks and empty containers from points within one hundred twenty-five (125) miles by the usually traveled highways of the limits of the City of Pittsburgh, Allegheny County, to points in the County of Allegheny, and vice versa."

In its order approving the transfer the commission deleted from the certificate the words "glass lined" and left to the transferee's own managerial choice the type of equipment to be used.

Appellants, protestants in the transfer proceeding, contend that the commission erred in approving the transfer because (1) the transferor abandoned service under the certificate prior to the date of transfer, (2) no proof of continuing public necessity was produced and the transferee proposes to institute a service basically different from that rendered by the transferor, and (3) the commission, in deleting the words "glass lined" from the certificate without giving appellants notice and opportunity to be heard as required by Section 1007 of the Public Utility Law, P. L. 1053, 66 PS §1397, violated procedural due process.

William Lenzner, the transferor, has been hauling milk since 1924. He acquired his certificate on December 20, 1938, under the so-called "grandfather clause". While the record does not disclose the details of his operations prior to 1958, at one time he had as many as five tank trucks or trailers of varying capacity. During the year 1958, in addition to hauls for Meadow Gold Dairies, Inc., Lenzner made several hauls from Berlin to the Pittsburgh plant of the Borden Milk Company, although it appears that these hauls were made at the direction of Meadow Gold Dairies, Inc. Since January 1, 1959, Lenzner has hauled milk only for Meadow Gold, but his hauls for Meadow Gold have been made, not only from Berlin, Somerset County, but

also from Sandy Lake in Mercer County. Lenzner has done no hauling since March 1, 1960, when Meadow Gold Dairies, Inc. began hauling its own milk. Lenzner's gross revenues under his certificate were approximately $65,500 in 1957, $75,000 in 1958, $88,000 in 1959 and $16,000 in January and February of 1960.

Lenzner testified that he has done no hauling since March 1, 1960, because he wants to retire but that he did not voluntarily cease operations on March 1, 1960. He signed the agreement transferring all rights under his certificate to Robert H. Carr & Sons for a consideration of $2,000 on April 4, 1960. On August 15, 1960, the date of the commission's hearing, he still had two stainless steel tanks and two tractors. He testified that he would sell this equipment for the best price possible "if this deal goes through" but that, if the commission did not approve the transfer, he would continue in the business of hauling milk under his existing certificate.

G. Robert Carr, a partner and general manager of the transferee, Robert H. Carr & Sons, testified that his company has been engaged as a partnership since 1932 in the business of transporting milk, related products and liquid sugar. His company has a net worth of approximately $160,000 and operates approximately forty milk tanks and fifty-five tractors. The intrastate rights issued to Carr by the Pennsylvania Public Utility Commission include the right to transport, as a Class D carrier, milk from the City of York to a dairy in Philadelphia and to the Borough of Collingdale, Delaware County, milk in containers from the City of Lebanon to Philadelphia, milk and milk products from certain plants in Union, Snyder and Center Counties to Hershey, Pennsylvania, and fluid milk in tank trucks for a certain company "from the Borough of Athens, Bradford County, and within fifty miles by the usually travelled highways in the limits of said borough to points within two hundred twenty-five (225) miles by the usually travelled highways of the said county."

Mr. Carr also testified that he had no definite plans for the new area, except to make his organization available to the public, that his company had never hauled products intrastate in the western part of Pennsylvania and that its rates for the area, which might be the same or different from its present milk rates, would be filed only after an analysis of the entire region had been made, that his company would establish an office or terminal in Lenzner's area, if necessary, and that Carr would not go out and try to take customers away from the protestants, Orlo L. Prior, Inc. and the W. D. Rubright Co., but, if customers of these protestants requested service, Carr would provide it.

Elton D. Johnson, president of the protestant, Orlo L. Prior, Inc., testified that his company and its predecessor had been in the milk transportation business for over thirty years, that its principal place of business was located at Portersville, Butler County; that it employed fifty-two persons and operated thirty-eight tractors, forty-four stainless steel tank trailers and five refrigerated vans, and that it was authorized to transport milk and milk products in tanks, containers and cans from points in the Counties of Erie, Crawford, Mercer, Lawrence, Butler, Indiana, Jefferson, Clarion, Armstrong, Washington and Westmoreland to points in Allegheny County. Mr. Johnson testified that his company did not consider Mr. Lenzner any danger as a competitor because "he was a very high class person", because he observed the rule of "live and let live", and because he did not have "growing pains". Finally, he testified that in his opinion there would be a higher competitive potential with Carr than existed with Lenzner, that Prior had sufficient equipment with the Rubright Company to service "this whole area" because Prior ordinarily operated no more than twenty-five of its forty-four tanks in a single day and always had a large number in reserve and that his company would

be forced out of business if the transfer to Carr was approved.

On cross-examination Mr. Johnson admitted that his fears of undue competition were based upon statements made by truckers who operated in the same area as Carr, to the effect that Carr was a "cut-throat outfit". He also admitted that his company had no operating authority in the following thirteen counties to which Lenzner's authority extended: McKean, Cameron, Clearfield, Center, Huntingdon, Cambria, Blair, Franklin, Fulton, Bedford, Forest, Elk and Warren.

Elizabeth R. Lewis, secretary and treasurer of the protestant, W. D. Rubright Co., testified that her company and its predecessor had been engaged in the business of transporting milk and milk products for more than thirty years, that the company had five bulk farm pick-up trucks, twenty large tank trailers, seventeen tractors and one refrigerated van on a semi-trailer, and that it was authorized to provide service in Erie, Crawford, Lawrence, Mercer, Butler, Armstrong, Venango, Allegheny, Beaver and Westmoreland Counties. The witness further testified that Rubright's equipment was not being used to its fullest extent because the company generally had three to five tanks available. Finally she testified that she was protesting the application because, while Lenzner did not enter Rubright's territory and did not solicit any of Rubright's customers, she did not "feel" that would be true if he sold his certificate to Carr, but on cross-examination she admitted that she had never had any transaction with Carr and had never done business in the same area as Carr.

Section 202 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1122, provides, in part as follows: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained . . . it shall be lawful . . . (c) For

any public utility to begin the exercise of any additional right, power, franchise, or privilege. (d) For any public utility to . . . surrender . . . any service, right, power, franchise, or privilege . . . (e) For any public utility . . . to acquire from, or to transfer to, any person . . . the title to, or the possession or use of, any tangible or intangible property used or useful in the public service . . ."

Under Section 203 of the Public Utility Law, 66 PS §1123, the commission may issue a certificate of public convenience "only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public . . ."

By the express terms of Section 1107 of the law, 66 PS §1437, review of commission orders upon appeal to this court is limited by the following injunction: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights". As we said in *Railway Express Agency, Inc. v. Pennsylvania Public Utility Commission,* 195 Pa. Superior Ct. 394, 401, 171 A. 2d 860, 863 (1961): "This court . . . will not disturb the conclusions of the commission unless they are capricious, arbitrary or so unreasonable as to amount to an error of law . . . it is not the function of the court to sit as a superadministrative board of review."

1. To support their contention that Mr. Lenzner abandoned all rights under his certificate prior to the transfer to Robert H. Carr & Sons, the appellants rely solely upon Lenzner's testimony that he furnished service only to Meadow Gold Dairies, Inc. after January 1, 1959, and that he ceased furnishing this service on or about March 1, 1960.

The record is silent with respect to Lenzner's service prior to 1958. However, in view of the substantial

and increasing revenues which Lenzner obtained from service for Meadow Gold during the years 1958, 1959 and the first two months of 1960, Mr. Lenzner's preoccupation with the business of Meadow Gold is understandable. Furthermore, the service for Meadow Gold required Lenzner to exercise the rights granted in paragraphs one or three of his certificate as well as the rights granted in paragraph two, because Meadow Gold required Lenzner to haul from Sandy Lake in Mercer County as well as from Berlin, Somerset County.

When Lenzner lost Meadow Gold's business in March of 1960, he had three courses open to him. He might continue in business himself and carry on operations under clauses one or three of his certificate, he might retire and sell his right to do this to another company or he might improvidently abandon his rights. Mr. Lenzner decided to sell and retire, if possible, and within several weeks after he lost Meadow Gold's business he signed an agreement transferring his rights to Carr. In the meantime on March 23, 1960, he signed the Annual Report form, which the commission required him to file by March 31st of each year, setting forth numerous details concerning his operating revenues and operating expenses, and he filed this report with the commission on March 26, 1960. On the date of the hearing, August 15, 1960, Mr. Lenzner still had two tank trailers and two tractors available for service, upon which he was continuing his insurance, and he testified in so many words that, if the commission did not approve the transfer to Carr, he intended to continue operating a milk hauling business under his existing certificate. He thus clearly indicated that he chose to sell his rights, or if the commission disapproved the sale, to exercise his rights under clauses one or three. There was no indication in his testimony of any intention to abandon his rights.

The cases in which the commission has found an abandonment are distinguishable from the present case

by reason of the fact that the evidence of abandonment in those cases was clear and convincing: *Application of Elizabeth Evans*, 18 Pa. P. U. C. 353 (1938) (where a fixed route bus service had been suspended for more than three years) ; *Application of Donald E. Bicker*, 32 Pa. P. U. C. 601 (1954) (where no operations had been conducted for seven years and all equipment had been leased to another carrier) ; *Application of Jesse A. Kroninger*, 34 Pa. P. U. C. 492 (1956) (where the carrier had conducted no authorized transportation for three or four years and had sold his equipment) ; and *Rule Issued Against John H. Peters, t-d-b-a Peters Trucking Company*, 35 Pa. P. U. C. 689 (1958) (where there was testimony that no authorized service had been rendered for four or five years).

The present case comes under the decisions in which the Pennsylvania Public Utility Commission has concluded that no abandonment was shown: *Application of Jones Motor Company, Inc.*, 26 Pa. P. U. C. 132 (1946) (where the transferor, whose operations were curtailed by wartime conditions, always maintained a truck capable of rendering service, never put himself in a position where he could not render service upon request, and rendered some service during the year of transfer and preceding years) and *Application of Frank J. Cutler, Jr.*, 26 Pa. P. U. C. 146 (1946) (where wartime conditions caused a suspension of the transferor's operation for a year or two, but he retained and continuously licensed one vehicle, kept his insurance in force and tariffs on file, and continued to submit assessments and annual reports).

2. In support of their contention that the transferee proposes to institute a service basically new and different from that rendered by the transferor, and that, consequently, proof of public necessity is required under our decision in *Paradise v. Pennsylvania Public Utility Commission*, 184 Pa. Superior Ct. 8, 132 A. 2d

754 (1957), the appellants rely upon Lenzner's testimony that he served only Meadow Gold Dairies, Inc. since January 1, 1959, Carr's testimony that his company would perform service for any of the protestants' customers who requested it, and the protestants' testimony that they did not regard Lenzner as a serious competitor, but felt that Carr's operations would be unduly competitive and harmful.

Since there is no evidence in the record showing how Lenzner conducted his operations from 1924 until 1958, the number or location of available customers or the volume of available business, the nature of the operations which Lenzner might lawfully have undertaken upon the termination of his dealings with Meadow Gold is purely speculative. Under the circumstances, the situation with which we are dealing here is unlike the factual situation in the *Paradise* case, and resembles more closely the kind of situation which we described in that case as ". . . one such as arises when an aggressive and financially sound company or individual acquires by transfer a withering or neglected transportation business which, up to the time of the transfer, had been a source of little concern to competing carriers in the area." 184 Pa. Superior Ct., at page 17, 132 A. 2d at page 759. That proof of public necessity is not required in transfer situations such as the one just described is the necessary inference to be drawn from our opinion in the *Paradise* case and *Hostetter v. Pennsylvania Public Utility Commission*, 160 Pa. Superior Ct. 94, 49 A. 2d 862 (1946).

The holding in the *Paradise* case does not support the contentions of the appellants. In the *Paradise* case the commission had approved the transfer of rights to transport certain products between points in the Borough of Laceyville, Wyoming County, and points fifty miles distant from that borough. The transferor originally had sought and thereafter had exercised rights

only between the area near his home in Meshoppen, Wyoming County, and other points in Pennsylvania. He seldom, if ever, transported between points in the Scranton-Wilkes-Barre area. The transferee, whose previous rights authorized it to transport only certain specified cargo between the City of Scranton and certain limited points outside the city limits, thereupon created a new transportation service, designed primarily for the Scranton area, by establishing a general transportation service for property of all kinds in the Scranton area and beyond to points such as Honesdale, Hazleton, Williamsport and the New York stateline. In our opinion upholding the right of the commission, acting under Section 1007 of the Public Utility Law, 66 P.S. §1397, to amend or rescind its order approving the transfer, in the absence of requisite evidence of public necessity, we described the situation before us there as one where ". . . withering if not already dead rights, were not revived and conducted by the transferee in their native terrain . . . [but] . . . were uprooted and transplanted in Scranton to form a basis for a service which did not have the slightest resemblance to any service previously provided by the transferor". 184 Pa. Superior Ct., at page 17, 132 A. 2d at page 759.

Under the *Hostetter* and *Paradise* cases proof of public necessity ordinarily is not required in applications for transfer of existing certified rights. However, the approval of a transfer is not res judicata and the commission, acting under the broad powers vested in it by Section 1007 of the Public Utility Law, 66 P.S. §1397, may amend or rescind its order approving a transfer if and when the transferee creates an entirely new transportation service drastically different from that of the transferor and fails to produce requisite proof of public necessity for such new service.

3. Appellant's contention that the commission materially modified the certificate by eliminating the

words "glass lined" without giving appellants notice and opportunity to be heard is without merit. The record clearly indicates that the appellants themselves raised the issue that the words "glass lined" constituted a limitation upon Lenzner's rights, and they had ample opportunity to offer evidence that the words were not superfluous but represented valid limitations upon Lenzner's rights, if they so wished. The record shows that glass lined tanks are outmoded and that both Lenzner and the Prior Company have been using stainless steel tanks exclusively. Under the circumstances the appellants were not aggrieved by the deletion and no good purpose would be served by remanding the record for an additional hearing. Finally, since it appears that paragraph three of the certificate, which did not contain the words "glass lined", duplicates all of the rights granted in paragraphs one and two of the certificate, it does not appear that the commission's deletion has any effect whatever upon the rights granted in the certificate.

Order affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I respectfully dissent. There can be but one conclusion drawn from the record, viz., Lenzner is attempting to sell rights which he has abandoned. Therefore, it was improper to presume a continuing public necessity. Since 1958 Lenzner curtailed his activities to hauling for Meadow Gold Dairies, Inc. (the few hauls he made to the Borden Milk Company plant in Pittsburgh were in fact, for Meadow Gold) ; but since March 1, 1960, he has hauled for no one because he wanted to retire, and as I read the record, he did retire. The consideration which Carr and Sons are paying for his rights give further support to this conclusion. In light of the income received from the business when it was in active opera-

tion, the consideration of $2,000 is nominal. Carr and Sons are buying just the abandoned empty shell, the meat of the nut having been eaten.

I would reverse the order of the Commission.

WATKINS, J., joins in this dissent.