Latrobe Bus Service, Appellant, *v.* Pennsylvania
Public Utility Commission.

Argued November 19, 1953. Before RHODES, P. J., HIRT, ROSS, GUNTHER and WRIGHT, JJ.

*John S. Lightcap, Jr.,* with him *Gene E. McDonald* and *Lightcap & McDonald,* for appellants.

*Clarence M. Freedman,* Assistant Counsel, with him *Lloyd S. Benjamin,* Counsel, for appellee.

*James W. Hagar,* with him *McNees, Wallace & Nurick,* for intervenors, appellees.

OPINION BY WRIGHT, J., March 16, 1954:

Andrew Sonafelt, Earl H. Sonafelt and Jack L. Sonafelt, co-partners, trading and doing business as Latrobe Bus Service, and hereinafter referred to as Latrobe, hold a certificate of public convenience au-

thorizing them to transport persons by bus over scheduled routes in and between the Boroughs of Latrobe and Ligonier, and points in the Townships of Derry, Unity and Ligonier, Westmoreland County. On or about September 8, 1950, Latrobe filed an application with the Public Utility Commission to render additional service, namely, to transport groups and parties of persons from the above recited points to any point in Pennsylvania. Protests were filed by Chestnut Ridge Transportation Company, Pennsylvania Greyhound Lines, Inc., Hutchison Bus Lines, New Alexandria Bus Company, Inc., The Pennsylvania Railroad Company, and Ligonier Valley Railroad Company. Hearings on said application were held on November 21, 1950, and January 11, 1951. On May 7, 1951, the Commission approved the application in a "short form" order, subject to the condition that no service should be rendered from the Village of Crabtree or within a three mile radius thereof. Chestnut Ridge Transportation Company and Hutchison Bus Lines filed a petition for rehearing, which was denied by the Commission on July 30, 1951. Chestnut Ridge Transportation Company then took an appeal to this court at No. 26 March Term 1952. Latrobe was subsequently granted permission to intervene.

On September 22, 1951, upon the Commission's petition for remission of the record, we made an order remanding the record and proceedings to the Commission "for further study and consideration, and to make specific findings of fact in sufficient detail to enable this Court upon appeal to determine the controverted question presented by the proceeding . . . and the entry of such an order in lieu of the prior order of May 7, 1951, as may be deemed just and proper in the premises . . ." On December 22, 1951, upon the Commission's petition for permission to reopen the record, we made an order

reopening the record and authorizing the Commission "to conduct such hearing or hearings as it believes is necessary for the taking of additional testimony or evidence to complete the record and upon completion of the record to make specific findings of fact in sufficient detail to enable this Court upon appeal to determine the controverted questions presented by the proceedings . . . and the entry of such an order in lieu of the prior order of May 7, 1951, as may be just and proper in the premises . . . ."

On September 30, 1952, a further hearing was held before the Commission, at which time Latrobe and Chestnut Ridge Transportation Company both appeared. At the commencement of the hearing, counsel for Latrobe made the following statement: "If the Examiner please, this is a hearing called for the purpose of taking additional testimony in the matter of the application of Latrobe Bus Company". On July 13, 1953, the Commission entered an order cancelling the certificate of public convenience previously granted to appellants and refusing the application for lack of necessity. On July 31, 1953, the appeal at No. 26 March Term 1952, was discontinued. On August 12, 1953, Latrobe filed the present appeal from the Commission's order of July 13, 1953. Chestnut Ridge Transportation Company was subsequently granted permission to intervene. On October 5, 1953, we ordered that the appeal be made a supersedeas.

Appellants contend first that, since the Commission had issued its order granting the right to render group and party service, and since an appeal from said order was thereafter filed, the Commission had no right "to issue another order reversing its first order and refusing the application"; and second, that if the order of July 13, 1953, is thus vacated, this court should sustain the Commission's "short form" order of May 7,

1951. These contentions present solely a question of procedure. The order of July 13, 1953, is not attacked upon the merits[1]. We may not disturb the order except for lack of evidence to support the findings, for other error of law, or for violation of constitutional rights: *Ferrari v. Pa. P. U. C.*, 163 Pa. Superior Ct. 24, 60 A. 2d 602; *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646.

The basis of appellant's first contention is that the Public Utility Law, Act of 1937, P. L. 1053, as amended, 66 P.S. §1101, et seq., provides for only three situations in which the Commission may rescind or modify an order theretofore entered by it, namely, sections 1006, 1007, and 1106, 66 P.S. §§1396, 1397, and 1436, and that the procedure followed by the Commission in the case at bar is not authorized by any of these sections. Section 1006 concerns applications to the Commission for rehearing, which must be filed within fifteen days. Section 1106 concerns the discretionary power of this court to remand the record and proceedings to the Commission for the purpose of taking after discovered evidence. Section 1007 provides that: "The commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it".

It is obvious that section 1006 does not apply. We need not pass upon the applicability of section 1106. Our decision will be based upon a consideration of section 1007, as we are not in accord with the limited construction appellants place upon that section. They endeavor to restrict it to complaint proceedings involving violations of the terms and conditions of certifi-

---

[1] The extent to which there shall be competition between carriers is largely an administrative question within the sound discretion of the Commission: *Zurcher v. Pa. P. U. C.*, 173 Pa. Superior Ct. 343, 98 A. 2d 218.

cates. However, a review of sections 1001 to 1005, 66 P.S. §§1391-1395, reveals that these sections apply to complaints and the procedure for filing them, holding hearings, et cetera. If restricted as urged by appellants, section 1007 would merely duplicate the provisions of the preceding sections. In our opinion, section 1007 refers to complaints simply for the purpose of setting forth by analogy the requirements for notice and hearing. This construction of the section is approved in Casper, Pennsylvania Public Utility Law and Procedure. It should be noted that appellants were given notice and an opportunity to be heard and raised no procedural objection until after the subsequent adverse order of the Commission.

The Commission was granted broad power to effect the legislative intent. Section 203, 66 P.S. §1123, after first providing that the Commission must find or determine that the granting of a certificate is necessary or proper for the service, accommodation, convenience, or safety of the public, sets forth in sub-section (b) that: "For the purpose of enabling the commission to make such finding or determination, it shall hold such hearings, . . . as it may deem necessary or proper in enabling it to reach a finding or determination". Section 902, 66 P.S. 1342, sets forth that: "In addition to any powers hereinbefore expressly enumerated in this act, the commission shall have full power and authority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders or otherwise, all and singular the provisions of this act, and the full intent thereof; *and shall have the power to rescind or modify any such regulations or orders*". (Italics supplied.)

In *Womelsdorf Consolidated Water Co. v. Pa. P. U. C.,* 160 Pa. Superior Ct. 298, 50 A. 2d 548, we said that "broad powers were intended to be given to the

Commission to carry out the purpose of our utility legislation". This liberal construction is in accord with the declaration of policy set forth in section 801, 66 P. S. 1301. The Commission has such powers, in addition to those specifically declared, as are necessary and proper for the regulation of service and facilities: *Duquesne Light Co. v. Pa. P. U. C.,* 164 Pa. Superior Ct. 166, 63 A. 2d 466. Its procedure in the instant case is not entirely novel. See *Ruettger et al. v. Pa. P. U. C.,* 164 Pa. Superior Ct. 388, 64 A. 2d 675. Our conclusion is that, in holding the hearing of September 30, 1952, and in entering its order of July 13, 1953, the Commission was acting entirely within the powers conferred upon it by the Public Utility Law.

In view of our determination of the first question, appellants' second contention falls. We are here concerned only with the appeal from the order of July 13, 1953. So far as the order of May 7, 1951, is concerned, the appeal at No. 26 March Term 1952, has been discontinued.

The Commission's order of July 13, 1953, is affirmed at appellants' cost. Our order of October 5, 1953, is vacated, and the supersedeas is terminated.