Wattsburg Telephone Cooperative Association, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued November 14, 1956.  Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR,
JJ.

*J. Bryan,* with him *Clarence T. Bryan, Clifford H. Kahn,* and *Bryan, Joslin & Bryan,* for co-operative association, appellant.

*Edward Munce,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Frank B. Quinn,* with him *Quinn, Leemhuis, Plate & Dwyer,* for telephone company, intervenor.

OPINION BY ERVIN, J., December 28, 1956:

Wattsburg Telephone Cooperative Association filed a complaint with the Pennsylvania Public Utility Commission charging that General Telephone Company of Pennsylvania had unlawfully encroached upon its exclusive service area when it extended local exchange service outside an agreed-upon operating territory in Wayne and Amity Township, Erie County, Pennsylvania. Complainant prayed that the respondent be restrained from constructing telephone lines and furnishing telephone service within the area served by complainant and that respondent be required to remove its lines and refrain from furnishing service in the area in the future. An answer was filed by the respondent denying that complainant has exclusive territorial rights in the area in question and after a hearing at which testimony was offered by both parties, the commission determined that the public interest would be served by the extension of respondent's service into the disputed area and ordered that the complaint be dismissed. This appeal by the complainant followed.

The General Telephone Company of Pennsylvania was formerly known as the Mutual Telephone Company which was incorporated under the laws of Pennsylvania on February 1, 1897 with charter power to render telephone service in the City of Erie and Millcreek Township in Erie County, Pennsylvania. On January 17, 1921 the Public Service Commission ordered the issuance of a certificate of public convenience evidencing the commission's approval of an amendment to the charter of the Mutual Telephone Company, granting the Company the right to enlarge its territory so as to include all of the counties of Erie, Warren and Crawford. However, in its order the commission made the following stipulation: "That prior to the construction of new lines into the territory specified in the aforesaid amendment and the furnishing of service over any new lines, the Mutual Telephone Company shall file its petition with this Commission and secure its approval for the construction of such lines and the furnishing of such service." On June 27, 1921 the Mutual Telephone Company acquired the rights, franchises and property of the Union Telephone Company of Erie which had been granted a charter on July 29, 1904 to construct and maintain telephone lines and exchanges in various counties in Pennsylvania including Erie County. By subsequent amendments to its charter the Mutual Telephone Company became the General Telephone Company of Pennsylvania, the name under which it is presently operating. The testimony establishes that both Mutual Telephone Company and Union Telephone Company of Erie were furnishing local exchange service to the public in both Amity and Wayne Townships prior to January 1, 1914. Wattsburg Telephone Cooperative Association, the appellant here, commenced business on February 4, 1950

and was a successor in interest of the Wattsburg Telephone Company, an unincorporated association which had been providing service in the area of dispute for more than forty-five years.

Appellant contends the commission erred in finding that the General Telephone Company of Pennsylvania, intervening appellee, was not required to obtain a certificate of public convenience prior to rendering service in the disputed territory. This contention is without merit. The record fully substantiates the claim of the intervening appellee that it and its predecessors in interest were providing service in the disputed area prior to January 1, 1914, the effective date of the Public Service Company Law, Act of July 26, 1913, and therefore was not required to obtain a certificate of public convenience prior to commencement of operations in the area in dispute. The order of the commission properly held that "as a result of acquisitions and mergers and the rendition of local exchange service in the disputed area, prior and subsequent to January 1, 1914, General Telephone Company of Pennsylvania established its right to furnish the service. *Harmony Electric Co. v. P.S.C.*, 78 Pa. Superior Ct. 271 (1922)."

However, appellant argues that in view of the stipulation contained in the order of the commission dated January 17, 1921, quoted supra, the intervening appellee was expressly required to seek authority from the commission before constructing new lines under the extended territorial rights obtained under that order. The order required approval of the commission "prior to the construction of *new* lines . . ." (Emphasis added)

In the instant case the General Telephone Company of Pennsylvania merely extended its *existing* lines to

supply service to subscribers in the disputed area. It is unreasonable to contend that prior commission approval must be sought every time a new subscriber in authorized territory is given service by extension of existing lines. However, conceding that additional subscriber lines were constructed in violation of the order of the commission of January 17, 1921, the commission would not have been warranted in sustaining the complaint of appellant and require General to discontinue that part of its operations and thus deny to a segment of the public in the disputed area needed and desired telephone service from the only public utility then operating in the territory. Considering the testimony of subscribers in the area as to the unsatisfactory service or failure to obtain needed service from Wattsburg Telephone Cooperative Association, we are all agreed the commission properly found "the public interest is served by extension of the company's service into the disputed area."

Appellant also contends that General Telephone Company of Pennsylvania violated various oral agreements which were partially reduced to writing on December 4, 1947, whereby neither company was to encroach upon the territory reserved to the other. Appellant states that according to the terms of the agreement, Wattsburg Telephone Company was to serve Wattsburgh Borough and portions of the townships of Amity, Wayne, Venango, Greene and Greenfield as shown by a map which was offered in evidence designating the area to be serviced by Wattsburg. It is conceded that General extended its facilities and is presently providing telephone service to subscribers within the disputed area. The commission, in disposing of this contention, held that "a territorial agreement between a utility and a non-utility, in our opinion, is incapable

of support under the Pennsylvania Public Utility Law, Act of May 28, 1937, P.L. 1053."

The written agreement, contained on the map, concurring in the boundary lines shown thereon, was signed by representatives of the Pennsylvania Telephone Corporation and Wattsburg Telephone Co.

As noted above, the General Telephone Company of Pennsylvania has charter rights to furnish telephone service to the public in Wayne and Amity Townships. The residents in these townships have a legal right to the service which General is bound to render. Any agreement such as that here involved which restricts or impairs the obligation of a utility to render service in its chartered territory would be tantamount to an abandonment or surrender of its franchise to that extent and to be effective, requires approval of the public utility commission. The Public Utility Code [1] provides: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: . . .

"(d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege: Provided, That the provisions of this paragraph shall not apply to discontinuance of service to a patron for nonpayment of a bill, or upon request of a patron." The agreement between Pennsylvania Telephone Corporation, predecessor of General Telephone Company of Pennsylvania, and Wattsburg Telephone Company, predecessor of Wattsburg Telephone Cooperative Association, never having received approval by the commission cannot be considered a valid territorial agreement restricting the

[1] Act of May 28, 1937, P.L. 1053, art. II, §202; 1938 Sp. Sess., Sept. 28, P.L. 44, §1; 1939, June 19, P.L. 419, §1.

right of General to extend its service into the disputed area.

Moreover, it is noted that complainant is a cooperative association. As such it is not subject to regulation and control by the commission, being specifically excluded from the purview of the Public Utility Code which provides that "The term 'Public Utility' shall not include (a) . . . or (b) any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis. . ."[2] The record clearly establishes that appellant is a bona fide cooperative association. In order for a resident of either Wayne or Amity Townships to receive telephone service from Wattsburg Telephone Cooperative Association such resident must purchase at least one share of stock from the Association at a price of $5.00 per share. The Association is not required to allow any resident of Wayne or Amity Townships to become a member nor is it obliged to furnish telephone service to any resident who is not a member. Not being bound to furnish needed service appellant's objection to the rendition of telephone service by an authorized public utility ready, willing and able to do so and, in fact, bound to do so, cannot be sustained. Pertinent and applicable here is the statement of the North Carolina Utilities Commission in *Staley v. Central Telephone Co., Inc.*, 14 PUR 3d 342, involving an attempt by a telephone cooperative association to establish exclusive rights to render service in a specified area: ". . . Membership Corporation, and other similar corporations, have no legal right to serve all persons in any exclusive area and have no right to claim territorial integrity

[2] Act of May 28, 1937, P.L. 1053, art. I, §2; 1939, March 21, P.L. 10, No. 11, §1; 1939, June 15, P.L. 387, §1; 1939, June 15, P.L. 390, §1; 1939, June 21, P.L. 636, §1, 66 PS §1102(17)(g).

and freedom from competition as to nonmembers." Also pertinent and applicable is the decision of the Idaho Supreme Court in *Clearwater Power Company v. Washington Water Power Company*, 78 Idaho , 299 P. 2d 484, in which the order of the Idaho Public Utilities Commission dismissing for lack of jurisdiction the complaint by an electric cooperative association against an electric company for territorial encroachment was affirmed. As in this Commonwealth, it is established by statute in Idaho that cooperatives are not public utilities and are not subject to the jurisdiction of the public utilities commission. Chief Justice TAYLOR, speaking for the Idaho Supreme Court, stated: "The power thus given to the commission, to prevent interference by extensions of a public utility into territory already served, is limited to territory already served by 'another public utility,' and the complaint which the commission is authorized to hear is the 'complaint of the public utility claiming to be injuriously affected.' Section 61-526, I.C. The commission is given no authority by that section to hear the complaint of co-operatives."

A public utility duly authorized and empowered to provide telephone service in a specified territory cannot validly limit or impair its right to operate in authorized territory without the prior approval of the public utility commission.

Order affirmed.