Snyder et al., Appellants, *v.* Pennsylvania Public Utility Commission.

148

Argued June 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Harry P. Creveling,* for appellants.

*Edward Munce,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, and *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*William J. Wilcox,* with him *Snyder, Wert, Wilcox, Frederick & Doll,* for intervening appellee.

OPINION BY WRIGHT, J., September 11, 1958:

We are here concerned with appeals of Harold W. Snyder and Lehigh Motor Freight, Inc. from an order of the Pennsylvania Public Utility Commission dated December 9, 1957, in which appeals Agnes M. Smith was granted leave to intervene. On March 18, 1958, after hearing argument thereon, we refused the Commission's motions to quash the appeals. It will be necessary to set forth the history of the proceeding in some detail.

On August 18, 1947, at docket A.69567, the Commission granted a number of transportation privileges to Agnes M. Smith, who is engaged, as successor to her deceased husband, in the business of moving and general hauling. Included therein was a Class B privilege, hereinafter referred to as Bethlehem B, between points in the City of Bethlehem and within three miles of the limits thereof. On December 8, 1953, Mrs. Smith contracted in writing to transfer certain transportation privileges to Harold W. Snyder. On September 20, 1954, at docket A.80905 the Commission approved the transfer, which included Bethlehem B, and limited accordingly the remaining privileges of Mrs. Smith at

docket A.69567. On February 25, 1955, Mrs. Smith and Snyder agreed in writing that Bethlehem B had been erroneously included in the transfer, and should be transferred back from Snyder to Mrs. Smith. On March 3, 1955, at docket A.69567, Mrs. Smith filed an application, in which Snyder joined, requesting that the Commission approve such re-transfer. On March 18, 1955, at docket A.82024, Lehigh Motor Freight, Inc., of which Harold W. Snyder was one of the incorporators, applied to the Commission for approval of the transfer to it of the privileges originally transferred from Smith to Snyder at docket A.80905, including Bethlehem B. On May 31, 1955, on the petition of Snyder alone and without any notice to Mrs. Smith, the Commission granted Snyder leave to withdraw the application filed March 3, 1955, at docket A.69567. On June 4, 1955, Mrs. Smith filed a petition to intervene and protest the application of Lehigh Motor Freight, Inc. at docket A.82024, alleging that a mistake had been made in the original transfer proceeding at docket A.80905 and that Bethlehem B had been erroneously transferred to Snyder. On September 6, 1955, the Commission entered an order[1] directing a further hearing on Snyder's original application at docket A.80905, citing as its authority Section 1007 of the Public Utility Law.[2] Hearings

---

[1] "By reason of the facts now before us, we deem it expedient for the proper performance of our functions that the question of the rights to be conveyed to Lehigh Motor Freight, Inc. at A.82024, Folder 2, should first be determined prior to any action by the Commission on said transfer application. In order to insure a proper disposition of the matters involved and fair treatment to all parties concerned, the Commission will set the Snyder application at A.80905 down for hearing to determine whether the order of September 20, 1954, should be rescinded, modified or affirmed".

[2] "The Commission may at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it". Act of May 28, 1937, P. L. 1053, Section 1007, 66 P.S. 1397.

were held on October 6, 1955, and February 9, 1956, and the written agreement between Mrs. Smith and Snyder dated February 25, 1955, was introduced into the record. On September 4, 1956, the Commission entered an order amending its order dated September 20, 1954, at docket A.69567 so as to show that Mrs. Smith's remaining privileges included Bethlehem B, also amending its order of the same date at docket A.80905 so as to delete Bethlehem B from the privileges transferred to Snyder, and directing that its order be reflected in the record of the application of Lehigh Motor Freight, Inc. at docket A.82024. On September 28, 1956, Snyder and Lehigh Motor Freight, Inc. applied to the Commission for a re-hearing in dockets A.69567, A.80905, and A.82024, excepting to the order of September 4, 1956, inter alia, "for the reason that the Commission acted contrary to law in that it determined the contractual rights of private parties invoking equitable powers in a matter no way affecting the public interest". On November 26, 1956, the Commission "reopened the proceedings for further consideration". At a subsequent hearing on March 22, 1957, Snyder asserted for the first time that there was no error in the original transfer of Bethlehem B, and that he had executed the agreement of February 25, 1955, because he was told that Mrs. Smith was on the verge of a nervous breakdown. On December 9, 1957, the Commission entered the order presently under consideration, in effect re-affirming its order of September 4, 1956.

Appellants state the question before us to be as follows: "Where there is a sale of rights, which transfer after application is approved by the Pennsylvania Public Utility Commission, after which the transferee sells the rights by contract to third parties, may the Pennsylvania Public Utility Commission after petition by the original holder alleging an error, vary, reform, and

revise the terms of the original contract and the contract between the new holder and the third parties where there is no public interest involved?"

It is of course true, as argued by appellants, that the "Commission has no jurisdiction to adjudicate purely private rights". See *Reading and Southwestern Street Railway Co. v. Pa. P. U. C.*, 168 Pa. Superior Ct. 61, 77 A. 2d 102. However, a person or corporation transporting passengers or property as a common carrier is defined in Section 2 of the Public Utility Law (66 P.S. 1102) as a public utility. Under the provisions of Section 920 (66 P.S. 1360), the Commission does have power and authority concerning contracts entered into by public utilities "which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well being of the Commonwealth".

We are clearly of the opinion, contrary to appellants' position, that the Commission has not in this proceeding adjudicated any purely private rights.[3] It has merely amended its own order, as expressly authorized by Section 1007, Public Utility Law (see footnote 2). We recently pointed out in *Paradise v. Pa. P. U. C.*, 184 Pa. Superior Ct. 8, 132 A. 2d 754, that a certificate of public convenience "is neither a contract nor property, and its revocation does not deprive the holder of vested rights". While the nomenclature of the law of contracts is frequently employed in transfer proceedings, transportation privileges are not chattels which the holder thereof may sell at will or which a purchaser

---

[3] "Furthermore, in the opinion of this Commission, whether or not either party is entitled . . . to any legal redress . . . Likewise, whether or not Harold W. Snyder . . . incurred a legal liability to his successor in interest are not questions for this Commission to determine".

may acquire independent of Commission approval. Appellants were bound to know that, under appropriate circumstances, the certificate in question might be modified. The Commission has been granted broad authority to effect the legislative intent, and is empowered, not only to amend, but even to cancel certificates previously granted: *Latrobe Bus Service v. Pa. P. U. C.*, 175 Pa. Superior Ct. 164, 103 A. 2d 442. While the Commission may not act arbitrarily, it has the same power to revoke a certificate as it has to issue it, upon due cause being shown: *Paradise v. Pa. P. U. C.*, supra, 184 Pa. Superior Ct. 8, 132 A. 2d 754.

The scope of our review on this appeal is to determine whether there is error of law or lack of evidence to support the finding, determination, and order of the Commission. See *D. F. Bast, Inc. v. Pa. P. U. C.*, 185 Pa. Superior Ct. 487, 138 A. 2d 270. In its order of December 9, 1957, the Commission states that the testimony of appellant Snyder on March 22, 1957, "not only comes at a late date in these proceedings, but in the opinion of the Commission is not sufficiently impressive and credible to warrant changing the Commission order of September 4, 1956". The credibility of witnesses and conflicts in their testimony are matters for the Commission: *Gannon v. Pa. P. U. C.*, 162 Pa. Superior Ct. 88, 56 A. 2d 366. Our examination of this record does not disclose error of law in, or lack of evidence to support, the ultimate determination of the Commission. Indeed, it is difficult to perceive how the Commission could have arrived at any other conclusion.

Order affirmed.