General Telephone Company of Pennsylvania, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 13, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*John C. Kelley,* with him *Frank B. Quinn,* and *Quinn, Leemhuis, Plate and Dwyer,* and *Hull, Leiby and Metzger,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*W. Russel Hoerner,* with him *Rhoads, Sinon & Reader,* for applicant, intervening appellee.

OPINION BY WRIGHT, J., June 15, 1960:

We are here concerned with an appeal by General Telephone Company of Pennsylvania, hereinafter referred to as General, from those portions of an order of the Pennsylvania Public Utility Commission, dated June 22, 1959, which direct (1) that General file tariff

supplements excluding any and all portions of the certificated territory of Wattsburg Telephone Corporation, hereinafter referred to as Wattsburg, and (2) that overlapping conditions now existing shall be restricted to geographic location and contract life. Wattsburg was granted permission to become an intervening appellee. It will be necessary to set forth the factual background in considerable detail.

Some fifty-five years ago a number of groups of farmers in Erie County formed partnerships to build, maintain, and operate their own telephone facilities along country roads converging upon the Borough of Wattsburg. About the year 1920 the Wattsburg Telephone Company was organized, built an exchange, coordinated the facilities of the smaller groups, and began to furnish telephone service. Commission records in the form of tariffs, annual reports, and assessment payments indicate that a de facto utility service was provided until January 31, 1950. As of that date the Wattsburg Telephone Cooperative Association, hereinafter referred to as Association, was organized under the Act of June 7, 1887, P. L. 365, 14 P.S. Sec. 1 et seq. The facilities of the unincorporated Wattsburg Telephone Company were acquired by Association and telephone service has continued until the present time. While Association was not subject to regulation under the Public Utility Law,[1] there is no question, as found by the Commission, that it "succeeded to the interests of Wattsburg Telephone Company by the continuous rendition of service since January 31, 1950, to all persons in its territory desiring same".

General was formerly known as the Mutual Telephone Company, which had been incorporated on February 1, 1897. By Commission order dated January

---

[1] Act of May 28, 1937, P. L. 1053, 66 P.S. 1101 et seq. See in particular Section 2 (17), 66 P.S. 1102 (17).

17, 1921, its territory was enlarged to include all of the counties of Erie, Warren, and Crawford. On May 14, 1956, in *Wattsburg Telephone Cooperative Association v. General Telephone Company of Pennsylvania*, 34 Pa. P.U.C. 167, the Commission dismissed Association's complaint against General, wherein Association sought to restrain General from extending its telephone service into the area within which Association claimed it had exclusive authority by virtue of a prior territorial agreement entered into between Association and General. The Commission's order "rested on the explicit premise that the granting of the relief sought would necessarily have involved the delegation to a nonutility of a utility's charter obligation to render service, thereby removing the service area under dispute from our regulatory jurisdiction". On December 28, 1956, the order of the Commission was affirmed by this court on the ground that Association was not a public utility, and that the agreement relied on in that complaint proceeding was not enforceable under the Public Utility Law. See *Wattsburg Telephone Cooperative Association v. Pa. P. U. C.*, 182 Pa. Superior Ct. 594, 128 A. 2d 160.

The record at Application Docket No. 85902 discloses in Folder 1 the application of Wattsburg for letters patent filed August 22, 1958, and the application of Wattsburg for approval of its incorporation, organization, and creation filed October 24, 1958; and in Folder 2 the application of Wattsburg for approval of the beginning of the exercise of the right to furnish telephone service in designated portions of Erie County, filed October 24, 1958.[2] General entered protests

---

[2] A companion application filed concurrently, No. 85903, requested approval of the acquisition by Wattsburg of Association's property, rights and privileges. The Commission granted this application by order dated July 6, 1959. No appeal has been taken from that order.

and was given permission to intervene. Similar permission was given to four individuals who opposed the granting of the applications. Hearings were held on December 29, 1958 and on January 26 and 27, 1959. In these hearings General fully participated by counsel, cross-examining witnesses for the applicant and presenting evidence on its own behalf. Wattsburg introduced maps designating the service area for which Commission approval was requested. Within this proposed service area were located 432 customers of Association. Three of Association's customers were located without and four of General's recent customers were located within the proposed service area, all seven of whom were near the proposed territorial boundary line. Wattsburg's testimony indicates that Association's members, wishing to continue the present service arrangements, elected to exercise their legal right to incorporate as a public utility. This action was prompted by the recognition that an expansion and modernization program is warranted. As a recognized public utility, and with a certificated service area under Commission jurisdiction, Wattsburg will be enabled to obtain financing from the Rural Electrification Association.[3]

General's protest was based on the ground that it possessed charter rights to serve the area in question. The finding of the Commission was that, with the exception of the four subscribers hereinbefore mentioned, General did not render and never had rendered service within the area served by Association. The Commission concluded that, in view of the continuous service

[3] In this respect Wattsburg's evidence is to the effect that it anticipates an REA loan in the sum of $150,000.00. Commission certification of Wattsburg's right to service the area in question is required by the Act of Congress of May 20, 1936, c. 432, Section 201, as amended, 63 Stat. 948, 7 U.S.C.A. Section 922.

rendered by Association and its predecessor, and in the public interest, General was not entitled to pre-emption. In the words of the Commission: "We must thus reject General's contention that Harmony Electric Company v. Public Service Commission, supra, 78 Pa. Super. Ct. 271, 1922, is controlling. That case holds that the operating rights of a public utility corporation formed prior to January 1, 1914 are co-extensive with the rights expressed in its charter, and that the exercise of those rights may not be curtailed by Commission action. However, the Supreme Court's decision in Fogelsville and Trexlertown Electric Company v. Pennsylvania Power and Light Company, 271 Pa. 237, 114 A. 822, 1921, substantially qualifies the Harmony doctrine by holding that charter rights acquired prior to January 1, 1914, can be lost or forfeited by nonexercise, and that in such event it is for the Commission, in the exercise of its regulatory discretion, to determine which of two competing utilities should be permitted to serve. The qualification on the Harmony rule was again enunciated by the Supreme Court when it affirmed the Superior Court's decision in that very case, 275 Pa. 542, 119 A. 712, and stated that the rule was applicable to 'service within unabandoned chartered territory' ".

Following the entry of the order of the Commission on June 22, 1959, General filed a petition for rehearing requesting in the alternative that the Commission modify its order by excluding therefrom "any findings or orders defining or limiting the corporate or franchise rights of petitioner to serve the disputed territory". To this petition for rehearing, Wattsburg filed an answer. On October 6, 1959, the Commission denied the petition. This appeal by General followed.

The issue before us is actually a very narrow one. General does not here question that portion of the or-

der of the Commission approving the incorporation of Wattsburg or the beginning by it of the exercise of its rights. The appeal is limited to those portions of the order which in effect restrict the territory covered by General's duly filed tariffs and require General to reduce its service area. Appellant contends that the Commission order goes beyond the issues in the instant proceeding, and was "made without notice and hearing in violation of the provisions of the Public Utility Law, the Pennsylvania Constitution and the Constitution of the United States". It should be noted that appellant does not challenge the Commission's finding that service in the disputed area should be rendered by Wattsburg. Indeed, appellant concedes that, under Section 203 of the Public Utility Law (66 P.S. 1123), the Commission is empowered to determine whether or not Wattsburg's application should be approved, and if approved, whether or not conditions should be imposed. Under attack on this appeal is the Commission's power to restrict General's rights in the present proceeding without allegedly meeting the due process requirements of notice and hearing. The sole issue therefore is, conceding the existence of the Commission's substantive power to control and regulate competition and conceding that the instant case is one appropriate for the exercise of such substantive power, whether the Commission has followed correct procedure.

It is our view that the Commission, under its general powers as set forth in Section 902 of the Public Utility Law (66 P.S. 1342), and as more specifically delineated in Section 1007 (66 P.S. 1397), did follow correct procedure in making the order here under consideration. Section 902 sets forth that: "In addition to any powers hereinbefore expressly enumerated in this act, the commission shall have full power and au-

thority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders, or otherwise, all and singular the provisions of this act, and the full intent thereof; and shall have the power to rescind or modify any such regulations or orders". Section 1007 provides: "The commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it. Any order rescinding or amending a prior order shall, when served upon the person, corporation, or municipal corporation affected, and after notice thereof is given to the other parties to the proceedings, have the same effect as is herein provided for original orders; but no such order shall affect the legality or validity of any acts done by such person, corporation, or municipal corporation before service by registered mail upon such person, corporation, or municipal corporation of the notice of such change".

We had occasion to pass upon Section 1007 in *Latrobe Bus Service v. Pa. P. U. C.*, 175 Pa. Superior Ct. 164, 103 A. 2d 442, which involved a similar procedural question. It was therein contended that the Commission, after issuing an order granting the right to begin transportation service, could not, upon rehearing, and without instituting a complaint proceeding, issue a second order reversing the first order and refusing the application. We held that the Commission had the power to amend or rescind its orders in any appropriate proceeding, provided that the parties were properly before it and subject to the exercise of its jurisdiction. Of particular significance as applied to the instant case is the following language in our opinion: "It should be noted that appellants were given notice and an opportunity to be heard and raised no procedural objection until after the subsequent adverse order of the Commission". In demonstrating that, under Section 1007,

the powers delegated to the Commission were not the same as those with respect to complaints, we held in the *Latrobe* case that the words "as provided in the case of complaints" merely set forth by analogy the requirements for notice and hearing. In our opinion, Section 1007 authorizes the Commission to make the type of order which it entered in the present case.

Appellant relies principally on *Armour Transportation Co. v. Pa. P. U. C.*, 138 Pa. Superior Ct. 243, 10 A. 2d 86, but that case does not control the present appeal. This court was therein considering Section 1001 of the Public Utility Law (66 P.S. 1391), which deals with complaints. It was held that, where a public utility is charged by the Commission with violation of any law, a formal complaint in writing must be made setting forth the violation with reasonable particularity, and that failure to inform Armour of its violation by means of such a formal complaint was a denial of due process. However, as stated in that opinion: "The question of what is proper notice, or, as here, of what constitutes a specific designation of the issue raised or charges made, depends necessarily upon the facts of each case, the type of investigation being conducted, the violations alleged, and the penalty or order sought to be imposed". The *Armour* case was distinguished in *Ryan v. Pa. P. U. C.*, 143 Pa. Superior Ct. 517, 17 A. 2d 637.

Inherent in every application proceeding is the question of competition. See *Yellow Cab Co. v. Pa. P. U. C.*, 161 Pa. Superior Ct. 41, 54 A. 2d 301. In the instant case, Wattsburg's application which appears in Folder 2 concludes with a prayer that the Commission issue a certificate of public convenience evidencing its approval "of beginning of exercise of the right, power or privilege of furnishing telephone service to the public in those areas of County of Erie, Pennsylvania,

shown on Exhibit 'A' ". The service territory for which certification was sought, as shown on Exhibit "A", formed the basis of the Commission's order. In protesting, General averred: "(c) That the Protestant has the necessary facilities and has been and now is ready and willing to supply to all persons located within the towns and townships shown upon Exhibit 'A', upon request, adequate, efficient, reasonable and modern telephone service . . . (e) That granting by this Honorable Commission of a Certificate of Public Convenience requested in the Application will result in unwarranted competition inimical to the public interest". In the light of this language, appellant cannot now assert that it was not aware of the issues involved, particularly the issue of competition in the area for which application was made. Appellant actually is placed in the position of contending that it may freely contest Wattsburg's claim to territory and then, after an adverse ruling, may attack the proceeding itself because of an alleged lack of due process. What the Commission did was to dispose of all related matters in one order, since the parties involved were before it and had litigated all the issues. Should General's contention on this appeal be sustained, it would be incumbent upon the Commission to institute a separate complaint proceeding for the purpose of determining whether or not service in the disputed area should be non-competitive. Such circuitous procedure is not necessary. We are satisfied that appellant was clearly apprised of the issues, had full opportunity to be heard, and was not denied due process.

Appellant also argues that a ruling by the Commission's examiner limited the scope of the hearings and actually removed therefrom the question of curtailment or restriction of General's right to furnish competitive service. We do not so interpret the ruling in

question, and the testimony thereafter adduced at the hearings indicates that it was not so interpreted by the parties. One of the issues was whether General or Wattsburg should serve the contested area, and General participated in the hearings on that basis.

In summary, it is our conclusion that, in this contested application proceeding to determine which of two public utilities shall furnish telephone service in an area within which each seeks the exclusive right, the Commission did not deprive appellant of procedural due process by including in its order the provisions here under attack. We are of the opinion that service upon General of copies of Wattsburg's applications, together with General's protests and active participation in the subsequent hearings, constituted adequate notice and opportunity to be heard, and that the Commission's order properly disposed of all matters necessary for a complete adjudication.

The order of the Commission is affirmed.