# Neal Bulk Transport, Inc. v. Waddell

*William A. Gray*, for plaintiff.
*Thomas M. Mulroy*, for defendants.

HANDLER, *P.J.*, March 3, 1978—

## I.   PLEADINGS AND ISSUES

Plaintiff Neal filed its complaint in equity, averring that on or about May 1, 1971, its assignor, Neal Trucking, Inc., entered into an agreement with defendant Waddell that Waddell would restrictively

amend an application for a certificate of public convenience then before the Pennsylvania Public Utility Commission for approval at Docket no. A 87572, Folder no. 2, requesting authority to transport coal between points in the counties of Indiana, Cambria, Armstrong, Westmoreland, and Jefferson within 50 miles of the Borough of Indiana in this county so that the application would exclude transportation to, from, or between points on and east of Highway Route 219 and the right to transport to, from, or between the facilities or operations of North American Coal Company. In addition, Waddell granted Neal a "perpetual right of first refusal" to purchase the certificate issued by the Commission in accordance with the application and agreed not to lease any additional vehicles from any fleet operator except Neal. Although not specifically mentioned in the agreement, Neal withdrew its protest to the grant of authority requested by Waddell.

On or about March 22, 1976, Waddell agreed to transfer the operating rights here in question to Simpson. An application for a certificate of public convenience approving the transfer was made to the Pennsylvania Public Utility Commission, docketed to A 95356 F 1 Am-G, and although a hearing had been held at which Neal as a protestant had caused to be disclosed the existence of the agreement, no administrative determination had been made at the time the complaint was filed. Prior to Waddell entering into the agreement with Simpson, he had not offered the certificate to Neal in accordance with the agreement.

Neal requested relief from this court in the form of an injunction restraining Waddell from transferring the certificate here the subject of this suit to

Simpson and mandating Waddell to specifically perform the right of first refusal provision of his contract with Neal. Neal supported its right to relief on the contention that the subject matter of the Neal-Waddell Agreement was unique (specifically described as such in paragraph 11 of the Waddell-Simpson Agreement); and that Neal would suffer irreparable harm if denied its right of first refusal. Defendants, principally Simpson, contended that jurisdiction was exclusively in the Pennsylvania Public Utility Commission and that Neal had a full, complete, and adequate remedy at law.

On December 9, 1976, at a time still prior to a determination by the Pennsylvania Public Utility Commission, this court sustained defendants' preliminary objections but retained jurisdiction "for the purpose of entertaining an application for relief on such matters involving the agreement between Neal and Waddell not considered by the Pennsylvania Public Utility Commission and not cognizable by the Commonwealth Court of Pennsylvania on appeal." In a written memorandum confirming the open court determination dated February 25, 1977, this court concluded that it had no jurisdiction because although the right of first refusal provision of the Waddell-Neal Agreement might involve a private right therefor, within the rule of Snyder et al. v. Pennsylvania Public Utility Commission, 187 Pa. Superior Ct. 147, 144 A. 2d 468 (1958), the agreement here in question had been injected into the administrative process by Neal as a protestant. Since no administrative determination had then been made, it was impossible to determine whether the Commission had considered the agreement in its decision-making process. On January 27, 1977, the Commission entered an order

granting the Waddell-Simpson transfer and thereafter Neal filed an appeal before the Commonwealth Court of Pennsylvania. The appeal resulted in a long form order being issued by the Commission which specifically stated: "The option contract [right of first refusal] will not affect our decision of this case; the parties to it are, of course, free to pursue this matter in another forum."

On May 2, 1977, after plaintiff filed a petition for a rehearing based principally on the foregoing declaration of the Commission, this court granted a rehearing.* A hearing was held, after which the parties stipulated that the case be considered as a prayer for a permanent injunction. Defendants filed motions for compulsory nonsuit and dismissal. The respective issues are: 1. Is the Neal-Waddell Agreement a valid agreement? 2. If the Neal-Waddell Agreement is valid, is plaintiff entitled to equitable relief?

## II. FINDINGS OF FACT

1. That on or about May 1, 1971, Robert G. Waddell having filed an application before the Pennsylvania Public Utility Commission for a certificate of public convenience to transport coal between points in the counties of Indiana, Cambria, Armstrong, Westmoreland and Jefferson within 50 miles of the Borough of Indiana, Indiana County, entered into a written agreement with Neal Trucking, Inc., assignor of Neal Bulk Transport, Inc. to: (a) Amend the application to exclude transportation to, from, or between points on and east of Route 219 and between the facilities or operations of

---

*Since the Commission advanced no reason for ignoring the agreement, it was impossible to determine whether the point was cognizable in an appeal before the Commonwealth Court.

North American Coal Company. (b) To grant Neal Trucking, Inc. a perpetual right of first refusal of such rights, if granted. (c) To lease additional trucks only from Neal Trucking, Inc.

2. That Neal Trucking, Inc. withdrew its protest to the application in consideration for the undertakings of Robert G. Waddell.

3. That on June 21, 1971, the Pennsylvania Public Utility Commission issued a certificate of public convenience to Robert G. Waddell at A 87572 F. 2 granting the transportation rights requested in the amended application.

4. That the entire agreement referred to in paragraph 1 hereof was not disclosed to the Commission nor approved by it at any time prior to the grant of the certificate of public convenience to Robert G. Waddell on June 21, 1971.

5. That on March 22, 1976, Robert G. Waddell entered into an agreement with Edward R. Simpson for the sale and purchase of the certificated authority granted by the Pennsylvania Public Utility Commission at A 87572 F. 2 on June 21, 1971.

6. That at no time did Robert G. Waddell offer a right of first refusal to Neal Trucking, Inc. or Neal Bulk Transfer, Inc., its assignee.

7. That an application for a certificate of public convenience for the approval of the transfer was made to the Pennsylvania Public Utility Commission on May 12, 1976 and heard August 5, 1976. Neal Bulk Transport, Inc., the assignee, protested and placed the matter of the agreement between it and Robert G. Waddell before the Commission at that hearing.

8. That the Pennsylvania Public Utility Commission in a long form order dated March 24, 1977, stated that the option contract (right of first refusal)

did not affect its decision and that the parties are free to pursue the matter in another forum.

9. That the agreement between Robert G. Waddell and Neal Trucking, Inc., assignor, as it relates to restricting the application in scope, is an agreement that regulates and limits competition.

10. That the agreement referred to in paragraph 9 hereof as it relates to the right of first refusal is an agreement which limits the transfer and disposition of a certificate of public convenience.

11. That the agreement referred to in paragraph 9 as it relates to leasing equipment only from Neal Trucking, Inc., assignor, is an agreement that regulates and controls the use of and access to equipment by a common carrier.

## III. DISCUSSION

Inasmuch as the fundamental validity of the agreement between Simpson and Neal is questioned, this must be the first inquiry. Defendants attacked the contract as being illegal because in restraint of trade and also contrary to public policy. The subject matter of the contract is essentially within the jurisdiction of the Pennsylvania Public Utility Commission.

Waddell made application to become a common carrier by motor vehicle and, as such, became a public utility: Public Utility Law of May 28, 1937, P.L. 1053, art. I, sec. 2(6), (17)(c), as amended, 66 P.S. §1102. The legislature has delegated its authority to regulate public utilities to the Public Utility Commission which has the general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth: article IX, sec. 901, 66 P.S. §1341. This

has resulted in a grant of broad power to effect the legislative intent: Latrobe Bus Service v. Pennsylvania Public Utility Commission, 175 Pa. Superior Ct. 164, 103 A. 2d 442 (1954). Before a public utility may begin to offer, render or furnish service, it must obtain a certificate of public convenience granted by the Public Utility Commission: article II, sec. 202, as amended, 66 P.S. §1122. A certificate of public convenience shall be granted by order of the Commission, only if and when the Commission shall find or determine that the granting of such certificate is necessary and proper for the service, accommodation, convenience, or safety of the public; and for the purpose of enabling the Commission to make such a finding or determination, it shall hold such hearings which shall be public and before or after hearing, it may make such inquiries, physical examinations, evaluations and investigations as it may deem necessary or proper in enabling it to reach a finding or determination: article II, sec. 203, 66 P.S. §1123.

The paramount test in determining whether a certificate should be granted is whether or not it is in the public interest: Leaman Transportation Company v. Pennsylvania Public Utility Commission, 175 Pa. Superior Ct. 553, 106 A. 2d 901 (1954). The extent of competition is basically a matter within the administrative discretion of the Commission which once having been determined by the Commission will not be disturbed unless it is without support in the evidence or is so arbitrary, capricious and unreasonable as to amount to an error of law or violation of constitutional rights: Chemical Leaman Tank Lines, Inc. v. Pennsylvania Public Utility Commission, 201 Pa. Superior Ct. 196, 191 A. 2d. 876 (1963); Reeder v. Pennsylvania Pub-

lic Utility Commission, 192 Pa. Superior Ct. 298, 162 A. 2d 231 (1960). Implicit in the authority of the Commission to determine what is in the public interest are the questions of available equipment and facilities of a would-be public utility or an already established public utility: Zurcher v. Pennsylvania Public Utility Commission, 173 Pa. Superior Ct. 343, 98 A. 2d 218 (1953).

The objective of the agreement between Waddell and Neal and the clear intent of the parties was to intrude on matters exclusively delegated by the legislature to the Pennsylvania Public Utility Commission and motivated by the public interest for underlying the policy of the law authorizing the regulation of public utilities is first and foremost the public interest. It is for this reason that a public utility may not begin to operate or continue to operate, modify its operations, or transfer its operations without a certificate of public convenience. It is for this reason that such matters are determined only after a public hearing upon due notice to all interested parties which extends beyond holders of competing interests, followed by any necessary investigation before a certificate is either granted or denied. In this case, Neal used its bargaining power as a certificated carrier to obtain from Waddell (a) a restrictive amendment limiting the scope of his application, (b) a perpetual right of first refusal to purchase the rights (if granted), and (c) an exclusive leasing arrangement. The contract constituted a private agreement regulating matters within the exclusive jurisdiction of the Public Utility Commission because they are touched with the public interest aspects of the operation of a public utility.

It is not unusual for applicants and protestants to stipulate to a restrictive amendment in a proceed-

ing before the Public Utility Commission. However, these stipulations are permitted for the purpose of facilitating the proceeding. They are disclosed at a public hearing to the Commission and all other parties interested, and the Commission is not bound by any such stipulation. In the instances of a transfer of existing rights, the Commission has refused to follow a stipulation which excises a part of the transferor's authority.

Firmly imbedded in the law is the principle that public service corporations cannot lawfully make any contract or agreement, without special authority, which will prevent them from serving the public: 58 A.L.R. 804, Annotation. As early as 1916 in this Commonwealth in the case of Kuhn v. Buhl, 251 Pa. 348, 96 Atl. 977 (1916), our Supreme Court affirmed the rule that where any public right, franchise or privilege is to be disposed of by government officials or agents, whether by a public letting or award upon bids or by the *exercise of official discretion without bids*, it is against public policy for one competing applicant, candidate or bidder to contract for the extinguishment of another's competition. The precise question has never been decided in this Commonwealth but has been in New York. In the case of New York City Transit Authority v. Jamaica Buses, Inc., 192 N.Y. Supp. 2d 72 (1959), the court held that an agreement to withdraw opposition to an application for a certificate of public convenience in return for certain payments of money was void as against the public policy of the state because the selection and maintenance of a route for public transportation is based only upon public advantage and cannot be the subject of a private agreement.

In this Commonwealth, the Superior Court has

held that a public utility duly authorized and empowered to provide telephone service in a specified territory cannot validly limit or impair its right to operate in authorized territory [by private agreement with another party] without the prior approval of the Public Utility Commission: Wattsburg Telephone Cooperative Ass'n. v. Pennsylvania Public Utility Commission, 182 Pa. Superior Ct. 594, 128 A. 2d 160 (1956). It is the opinion of this court that the agreement which plaintiff seeks to enforce is invalid because it contravenes public policy. It is the public policy of this Commonwealth that certain matters involving public utilities be supervised, regulated and determined by the Pennsylvania Public Utility Commission. Without the knowledge or approval of the Public Utility Commission, the parties by a private agreement have undertaken to regulate at least two important matters in this category: the right to transfer a certificate of public convenience and the free access to equipment necessary to serve the public under the certificate. While a bare option or right of first refusal covering a certificate of public convenience might be enforceable, in this case it is supported by consideration involving the scope of an application before the Commission, thus interfering with the discretion of the Commission in determining the extent of competition necessary in the public interest. The agreement to lease from a fleet carrier exclusively is subject to the regulatory authority of the Public Utility Commission because the public interest requires a dependable service which, in turn, requires adequate equipment. Finally, after a grant of authority to one of the parties to the agreement, its effect could have been to impair a public utility in rendering authorized service. Without

prior approval of the Commission, such an agreement is invalid.

## IV. CONCLUSIONS OF LAW

1.  That a contract between private parties which essentially undertakes to regulate and control matters within the regulatory and supervisory authority of the Pennsylvania Public Utility Commission is against the public interest.

2.  That a contract between private parties undertaking to control matters within the exclusive regulatory and supervisory authority of the Pennsylvania Public Utility Commission which is against the public interest is against public policy.

3.  That the agreement in this case undertakes to control matters within the regulatory and supervisory authority of the Pennsylvania Public Utility Commission without its approval and therefore is against public policy and unenforceable.

## DECREE NISI

And now, March 3, 1978, in keeping with the foregoing findings of fact, discussion, and conclusions of law, it is ordered and decreed that the complaint be dismissed.